IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE ESTATE OF PERRY BREWINGTON :
DECEDENT, by and through the :
Administrator of the Estate, James D. Rosen :
:
v. : CIVIL ACTION NO. 05-6016
:
POLICE OFFICER LOMBARDO :
and POLICE OFFICER HORNER and :
CITY OF PHILADELPHIA :

## MEMORANDUM OF DECISION

THOMAS J. RUETER　　　　　　　　　　　　　　　　　November 3, 2010
Chief United States Magistrate Judge

　　　　Presently before the court is plaintiff's Motion For Reconsideration of the Court's Order Denying Plaintiff's Motion For A New Trial Pursuant to Federal Rules of Civil Procedure 59(a) and 60(b) (the "Motion") (Doc. No. 78). For the reasons that follow, the Motion is DENIED.

## I.　　FACTS

　　　　Plaintiff, the Estate of Perry Brewington, filed this action against Philadelphia Police Officers Joseph Lombardo and Richard Horner alleging that decedent Perry Brewington's constitutional rights were violated when he was shot and killed by Ramon Mills on November 16, 2003. Specifically, plaintiff alleges that the decedent's Fourteenth Amendment Due Process Rights were violated when the two defendant officers failed to seize a firearm that Ramon Mills allegedly had on his possession at the time the officers served Mills with a Protection From Abuse Order ("PFA Order").

A jury trial was held before the undersigned from August 11, 2010 to August 13, 2010. The evidence at trial was as follows.[1]

On November 16, 2003, the decedent was shot and killed by Ramon Mills. Ramon Mills was the boyfriend of the decedent's sister, Syeta Brewington, and the father of her child. Ramon Mills co-habitated with Syeta and allegedly had physically abused her. On November 13, 2003, after a fight, Syeta Brewington obtained a PFA Order against Ramon Mills. In her application for the PFA Order, Syeta Brewington claimed that Ramon Mills physically abused her and owned a firearm.

On November 16, 2003, at the request of Syeta Brewington, Philadelphia Police Officers Richard Horner and Joseph Lombardo served the PFA Order on Mills. After the PFA Order was served, a verbal argument occurred between Ramon Mills, Syeta Brewington, Syeta's mother, Dolores Burnett, and her sister, Krystle Brewington. Although the decedent was not present during this argument, Syeta testified that during the argument Mills told her he was going to kill her and her brother, Perry. At trial, both police officers denied having heard any threats made by Mills toward anyone, although they did say both Mills and the Brewington family were yelling and cursing at each other.

In an attempt to break up the argument, Officers Horner and Lombardo asked the parties to leave the scene. Eventually, all parties dispersed and the police officers left to resume their normal duties. Approximately one hour later, Ramon Mills shot and killed Perry Brewington. The two defendant police officers were not present at the shooting.

---

[1] Plaintiff did not order the transcript of the trial proceedings so the court is relying on its recollection of the testimony.

At trial, plaintiff argued that the police officers created an immediate danger to Perry Brewington by not seizing the firearm from Ramon Mills, or otherwise arresting him when they allegedly heard Mills tell Syeta that he was going to kill her and decedent. After several days of trial, the jury returned a verdict in favor of the two police officers, finding that they were not deliberately indifferent to decedent's constitutional rights.

After the verdict, plaintiff filed a motion pursuant to Fed. R. Civ. P. 60(a) claiming that the court should order a new trial because the two officers allegedly lied at trial when they testified that the PFA Order served upon Mills did not require the officers to seize any firearms on his possession. By Memorandum Order dated September 29, 2010, the court denied the motion finding that plaintiff had not shown by clear and convincing evidence that the two defendants engaged in fraud or misrepresentation. On October 8, 2010, plaintiff filed a motion for reconsideration of this court's September 29, 2010 Order. In support of the motion for reconsideration, plaintiff raises two new arguments not previously raised in the motion for a new trial. First, plaintiff argues that because the Honorable Edmund V. Ludwig denied summary judgment to defendants, under the "law of the case doctrine" the defendant police officers cannot testify that the PFA Order did not require them to seize any firearms from Ramon Mills. Second, plaintiff argues that under the doctrine of judicial estoppel, the police officers cannot now claim that they were not required by the PFA Order to seize a weapon from Ramon Mills.

## II. DISCUSSION

### A. New Issues Raised In The Motion For Reconsideration

The two issues raised in the motion for reconsideration - - the law of the case and judicial estoppel doctrines - - were not raised in the original motion for a new trial. This is

improper. Plaintiff's motion for reconsideration is an impermissible attempt at a "second bite at the apple." Having had its motion for a new trial denied, plaintiff now has advanced two new issues not previously raised to the court. A motion for reconsideration cannot be used as a means to argue new issues that "inexcusably were not presented to the court in the matter previously decided." Bhatnagar v. Surrendra Overseas, Ltd., 52 F.3d 1220, 1231 (3d Cir. 1995) (quoting Brambles USA, Inc. v. Blocker, 735 F.Supp. 1239, 1240 (D. Del. 1990)). Thus, the Motion is denied on this basis. Nonetheless, the court also will deny the Motion on the merits of the two new issues.

    B.    **The Merits of the Two New Issues**

        1.    **Law of the Case Doctrine**

In the first issue raised in the Motion, plaintiff argues that Judge Ludwig previously ruled that the PFA Order required the officers to remove any firearms from Ramon Mills and the law of the case doctrine precludes the officers from testifying or arguing that the PFA Order did not require them to immediately seize the weapons.

The law of the case doctrine "limits relitigation of an issue once it has been decided" in an earlier stage of the same litigation. In re Continental Airlines, Inc., 279 F.3d 226, 232 (3d Cir.), cert. denied, 537 U.S. 944 (2002). The law of the case doctrine, however, "does not restrict a court's power but rather governs its exercise of discretion." In re City of Philadelphia Litigation, 158 F.3d 711, 718 (3d Cir. 1998). Thus, a court may reconsider a previously decided issue "in extraordinary circumstances such as where: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." Id. (citation omitted).

4

In the instant case, Judge Ludwig denied the defendants' motion for partial summary judgment by Order dated September 15, 2008. In his memorandum supporting his decision, Judge Ludwig stated the following:

> Summary judgment must be denied. The evidence of record produced by plaintiff - primarily the "Temporary Protection From Abuse Order," together with the deposition testimony of the defendant officers and of decedent's family members - establishes that there is a genuine issue of material fact both as to whether the murder was a foreseeable and fairly direct consequence of the Officers' actions and as to whether decedent was a foreseeable victim. The "Temporary Protection From Abuse Order" states: "Defendant [Mills] shall immediately relinquish the following weapons to the Sheriff of Philadelphia County: GUN." Exhibit "F" to plaintiff's response, p. 41. According to Officer Harner's [sic] deposition, he read the PFA before serving it and discussed its contents with Office Lombardo. Harner [sic] deposition testimony, Exhibit "E" to plaintiff's response, p. 31. Officer Harner [sic] also testified that "if it [the PFA] said to remove the weapons, I would have removed them, yes." Id., pp. 18-19. Officer Lombardo testified that if a PFA requires relinquishment of a weapon, the serving officer is required to confiscate it. Lombardo deposition testimony, Exhibit "D" to plaintiff's response, pp. 8-12. It is undisputed that the officers did not confiscate Mills' gun at the time they served the PFA.
>
> . . . .
>
> Viewed in the light most favorable to plaintiff, a genuine issue of material fact is presented as to whether the officers' failure to confiscate Mills' weapon despite the clear language of the PFA, and their alleged disregard of direct threats against decedent rendered the subsequent murder foreseeable, and decedent a foreseeable victim.

Estate of Percy [sic] Brewington v. Joseph Lombardo, No. 05-6016, slip op. at 2-4 (E.D. Pa. Sept. 15, 2008) (footnote omitted).

By Memorandum Order dated July 21, 2009, Judge Ludwig denied defendant's Motion For Reconsideration of the court's September 15, 2008 Order. In the Memorandum Order, Judge Ludwig again suggested that the PFA Order "required" the officers to "remove Mills' gun from his possession." Estate of Percy [sic] Brewington v. Lombardo, No. 05-6016,

5

slip op. at 2 (E.D. Pa. July 21, 2009).

As noted above, Judge Ludwig's interpretation of the PFA Order was premised on the pretrial deposition testimony of Officers Lombardo and Horner. During their pretrial deposition testimony on April 1, 2008 and April 7, 2008, both officers testified about an event that occurred over four years earlier on November, 16, 2003. They tried to recall the events of that day and the PFA Order without the benefit of having the actual PFA Order available to them during their deposition. See Horner Dep. at 31 (noting that plaintiff's counsel had not yet seen the PFA Order and that he would move forward with the deposition "without it").

Officer Horner testified that he could not remember the details of the PFA Order for Ramon Mills, but said if the order required him to confiscate the weapon he would have complied with the order. Referring to PFA orders in general, Officer Horner stated the following in the deposition testimony cited by Judge Ludwig.

> Q. Is there a paragraph, to your understanding, that deals with weapons?
>
> A. If it's - - it can be inserted, yeah. There's a paragraph in there. A lot of times, I believe it's checked off. I haven't served one in years, but I believe there's a paragraph where someplace it's sectioned off, where the judge might write in there that if a person has weapons, maybe, remove them.
>
> Q. Okay.
>
> A. You know, we don't make the determination. In other words, if it's on the order that the weapon has got to come out, the weapons go.
>
> Q. In this particular case, do you remember the order saying anything about weapons?
>
> A. No.
>
> Q. That is, you do not remember?

6

> A. I do not remember.
>
> Q. Okay. If it had said anything about weapons - -
>
> A. Right.
>
> Q. - - and I'm not looking at the order now, and I'm not trying to trick you - -
>
> A. Right.
>
> Q. - - would you have made it a point to go in and remove any weapons?
>
> A. If it said to remove the weapons, I would have removed them, yes.

(Horner Dep. at 18-19.) Later, Officer Horner again said he did not recall if there was any information about weapons in the PFA Order. Id. at 31.

Officer Lombardo's deposition testimony also spoke in general terms about PFA orders and not about the specifics of the PFA Order served upon Ramon Mills. At pages 8-12 of Lombardo's deposition, cited by Judge Ludwig, Officer Lombardo stated the following:

> Q. What if the order indicated that weapons may be involved or that the person that's being served has weapons?
>
> A. Well, if the person has - legally has weapons, if it possesses, you know, a legally possessed weapon, you would have to - we would confiscate the weapon.
>
> . . . .
>
> Q. - - and you were informed either through the person trying to serve the PFA, or actually in the PFA it indicated there was a weapon, what would you do then?
>
> A. Well, the bottom line is, if we know where he's living, you know, and we have information that he does possess weapons legally or illegally, we're going to go about seizing them, whatever way we have to seize them.
>
> Q. Why is that, what's the reason?

> A. Well, if there's a protection order, then there's, you know, a safety issue at that point for the person who the order is against.
>
> Q. What do you mean by you'll go about any means necessary to secure the weapon?
>
> A. Well, once the PFA is in order, you know, to seize the weapon; so if it's in the house, and we can get access to the house, we'll seize the weapon.
>
> Q. Did they teach you at the academy that you're to read the protection from abuse order before you serve it on the person being served?
>
> A. Yes.

(Lombardo Dep. at 8-12.)

At trial, Officer Lombardo testified that in November, 2003, he was a police officer for only six months (Lombardo Dep. at 14), and he never read the PFA Order served upon Ramon Mills, but was merely acting as a back-up to Officer Horner, who had the primary responsibility to serve the PFA Order. Officer Horner testified at trial that the PFA Order served on Ramon Mills did not require the police to seize a firearm from him. This is a fair reading of the PFA Order against Ramon Mills. The PFA Order stated the following: "Defendant shall immediately relinquish the following weapons to the Sheriff of Philadelphia County: Gun." Thus, the PFA Order does not require the police to seize any weapons from Mills, but places the obligation on Mills to surrender any guns to the Sheriff of Philadelphia County. Accordingly, the court finds the law of the case doctrine does not preclude the police officers from testifying that they were not required to seize a gun from Ramon Mills. The Officers had available to them at trial, evidence that was not presented to them at their deposition, i.e., the actual PFA Order served upon Ramon Mills, which did not require the police to seize any weapon. Thus, when ruling on the motion for summary judgment, Judge Ludwig did not have the benefit of the

officers' testimony after they had the opportunity to review the actual PFA Order. Thus, the law of the case doctrine should not be applied in these circumstances.

   2.   **Judicial Estoppel**

In Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355 (3d Cir. 1996), the Third Circuit Court of Appeals explained the doctrine of judicial estoppel as follows:

> Judicial estoppel, sometimes called the "doctrine against the assertion of inconsistent positions," is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding. It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather it is designed to prevent litigants from "playing 'fast and loose with the courts.'" Scarano v. Central R. Co. of New Jersey, 203 F.2d 510, 513 (3d Cir. 1953) (citation omitted). "The basic principle . . . is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedures § 4477 (1981), p. 782.

Id. at 358.

Here, in their deposition testimony, the officers stated that, if the PFA Order required them to confiscate weapons, they would do so. At trial, when presented with the actual PFA Order for the first time, the officers stated that it was not necessary to confiscate the weapon because the PFA Order did not require them to do so. Instead, the PFA Order ordered Mills to relinquish his gun to the Sheriff of Philadelphia County. Again, the language of the PFA Order is materially different from the hypothetical PFA orders posed to the defendants at their deposition. These positions are not inconsistent nor does it appear the defendants were attempting to play "fast and loose" with the courts. Therefore, judicial estoppel does not bar defendants from testifying as they did at trial.

### III. CONCLUSION

For all the above reasons, Plaintiff's Motion For Reconsideration is **DENIED**.

An appropriate order follows.

BY THE COURT:

/s/ TJR
THOMAS J. RUETER
Chief United States Magistrate Judge